UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION, as receiver for AMERICA WEST BANK, LC, a Utah limited liability company,<br><br>                Plaintiff,<br><br>    v.<br><br>FOX CREEK HOLDING, LLC, a Wyoming limited liability company; ROCKY MOUNTAIN ENVIRONMENTAL ASSOCIATES, INC., an Idaho Corporation dba ROCKY MOUNTAIN ENVIRONMENTAL LLC; RIDGEWAY HOLDINGS, LLC, an Idaho Limited liability company, THE ESTATE OF GEORGE Z. MCDANIEL; HERBERT C. PASCHEN, individually; and JOHN DOES 1 - 10;<br><br>                Defendants. | Case No. 1:09-CV-00480-E-EJL-LMB<br><br>**MEMORANDUM ORDER AND DECISION** |

## INTRODUCTION

Pending before the Court in the above-entitled matter is Plaintiff Federal Deposit Insurance Corporation's (FDIC), acting as receiver for America West Bank, L.C., Motion for Partial Summary Judgment. (Dkt. 17.) The motion is made pursuant to Federal Rule of Civil Procedure 56. The matter is ripe for the Court's consideration. Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately represented in the briefs and record. Accordingly, and in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this motion shall be decided on the record before this Court without oral argument.

## FACTUAL AND PROCEDURAL BACKGROUND

The complaint in this action seeks a deficiency judgment and foreclosure on a mortgage securing a promissory note. On October 2, 2007, Defendant Fox Creek Holding, L.L.C. (Fox Creek) entered into a Promissory Note (Note) with the Plaintiff America West Bank, L.C. (AWB) that authorized a principal of up to $3,500,000 dollars with a 9% interest rate per annum. (Second Amended Compl. at ¶ 23, Dkt. 1-26.) The Note was secured by two mortgages, one on the Teton County Property and another on the Bonneville County Property. *Id*. at ¶ 15-16. Fox Creek's obligation was due in one payment on November 5, 2008. *Id*. at Ex A, 1. Plaintiff alleges that the total amount due under the Note is $3,402,935.29 together with accruing interest from September 5, 2008 to January 12, 2009 in the sum of $100,599.70 ($779.8393 per diem), for a total of

**MEMORANDUM DECISION AND ORDER - 2**

$3,503,535.56. *Id*. at ¶ 27. The Plaintiff alleges that they have made a demand for

payment and that Defendant has failed to make payment. *Id*. at ¶ 24.

   The complaint in this action was filed on January 22, 2009 in the District Court for

the Seventh Judicial District of the State of Idaho, in and for the County of Teton. The

complaint names as Defendants Fox Creek, Rocky Mountain Environmental Associates,

Inc. and L.L.C.[1], Ridgeway Holdings, L.L.C., the estate of George Z. McDaniel, Herbert

C. Paschen[2] and John Does 1-10. On May 1, 2009 the FDIC was appointed receiver for

AWB. (Statement of Material Facts in Supp. of Mot. for Partial Summ. J. at 12, Dkt. 19.)

On July 1, 2009 the FDIC was substituted as a plaintiff as receiver for AWB. *Id*. at 5. On

September 24, 2009 FDIC filed for removal to this court pursuant to 28 U.S.C. 1441 and

12 U.S.C. 1815.

   On January 15, 2010 FDIC filed their Partial Motion for Summary Judgment with

respect to Defendant Fox Creek. (Pl.'s Mem. in Supp. of Mot. for Partial Summ. J., Dkt.

18.) On February 8, 2010 Defendants Ridgeway Holdings, L.L.C. and the estate of

George Z. McDaniels filed a Notice of No Opposition to FDIC's Motion for Partial

---

[1] Rocky Mountain Environmental Associates (Rocky Mountain) claims a materialmen's lien against Fox Creek. Plaintiff names Rocky Mountain in this action in order to assert a superior claim against defendant Fox Creek. The Court notes that Rocky Mountain has repeatedly failed to abide by the Court's rules that require filing through a qualified attorney. Dist. Idaho Loc. R. 83.4(d). The Court notes that Rocky Mountain's memoranda have been stricken from the record. The Court recognizes that the Plaintiff has indicated that there are no genuine issues of material fact with regards to Rocky Mountain's claim.

[2] Before his death George Z. McDaniel and Herbert Paschen were a principal members of Fox Creek. Both were guarantors of the Note.

**MEMORANDUM DECISION AND ORDER - 3**

Summary Judgment. (Notice of No Opp'n to FDIC's Mot. for Partial Summ. J., Dkt. 22.) As a result, Fox Creek is the sole defendant for the purposes of this motion.

## STANDARD OF REVIEW

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The Supreme Court has made it clear that under Rule 56 summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element which is essential to the non-moving party's case and upon which the non-moving party will bear the burden of proof at trial. *See, Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the non-moving party fails to make such a showing on any essential element, "there can be no 'genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.[3]

---

[3] *See also,* Rule 56(3) which provides, in part:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

**MEMORANDUM DECISION AND ORDER - 4**

Moreover, under Rule 56, it is clear that an issue, in order to preclude entry of summary judgment, must be both "material" and "genuine." An issue is "material" if it affects the outcome of the litigation. An issue, before it may be considered "genuine," must be established by "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Hahn v. Sargent*, 523 F.3d 461, 464 (1st Cir. 1975) (quoting *First Nat'l Bank v. Cities Serv. Co. Inc.*, 391 U.S. 253, 289 (1968)). The Ninth Circuit cases are in accord. *See, e.g., British Motor Car Distrib. V. San Francisco Automotive Indus. Welfare Fund*, 883 F.2d 371 (9th Cir. 1989).

According to the Ninth Circuit, in order to withstand a motion for summary judgment, a party

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

*Id.* at 374 (citation omitted).

Of course, when applying the above standard, the court must view all of the evidence in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Hughes v. United States*, 953 F.2d 531, 541 (9th Cir. 1992).

**MEMORANDUM DECISION AND ORDER - 5**

# DISCUSSION

Generally, judgment entered on fewer than all claims in an action will not result in the termination of an action for those claims. Fed. R. Civ. P. 54(b). However:

> When an action presents more than one claim for relief – whether as a claim, counterclaim, crossclaim, or third-party claim – or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.

*Id.* The Court finds that given the nature of the action, the sum of money involved and the delay already incurred in this matter that there is no just reason to delay judgment pertaining to the foreclosure of the Teton County Property.

Fox Creek claims partial summary judgment is inappropriate because the FDIC is in violation of Idaho's "One Action Rule" and because the FDIC's method of calculating interest is an unfair and deceptive trade practice that warrants rescission of the contract or at the very least raises an issue of genuine material fact. In essence, Fox Creek argues that while there are no genuine issues of material fact for trial the FDIC is nevertheless not entitled to judgment as a matter of law.

## 1. Default

The terms of the Note and the fact of default are undisputed by the parties. The Note provides that the borrower is in default on the occurrence of:

> Payment Default. Borrower fails to make any payment when due under this Note.
> […]
> Death or Insolvency. The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or

**MEMORANDUM DECISION AND ORDER - 6**

any other termination of Borrower's existence as a going business or death of any member, the insolvency of Borrower, the appointment of receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws against Borrower.

Second Amended Compl., Ex A, Dkt. 1-27 at 1. The FDIC contends, and Fox Creek does not dispute, that Fox Creek entered into default when it failed to make required payments on September 8, 2008, on November 5, 2008 when it failed to make the single payment under which all outstanding principal and accrued interest was due, and when George Z. McDaniel, a principal member and guarantor of Fox Creek, died. (Plaintiff's Memorandum in Support at 4.)

It is also undisputed by the parties that the Note was secured by a mortgage on the Teton County Property and a mortgage on the Bonneville County Property. Only the foreclosure of the Teton County Property is at issue in this motion. The mortgage contains the same conditions of default as the Note. (Second Amended Compl., Ex B, Dkt. 1-27 at 3. The mortgage provides that in the event of default judicial foreclosure shall be one of the remedies available to the lender. *Id.* at 4. The mortgage also provides that should the foreclosure sale fail to cure the indebtedness of the borrower the lender shall have the option of seeking a deficiency judgment. *Id.* Accordingly, the FDIC seeks judicial foreclosure on the Teton County Property and a deficiency judgment against Fox Creek pursuant to Idaho Code § 6-101.

**MEMORANDUM DECISION AND ORDER - 7**

**2. One Action Rule**

It is Idaho law that in the event of a mortgage default the lender must pursue both

judicial foreclosure and a deficiency judgment against the borrower in a single action.

The Idaho Code provides:

> (1) There can be but one action for the recovery of any debt, or the
> enforcement of any right secured by mortgage upon real estate which action
> must be in accordance with the provisions of this chapter. In such action the
> court may, by its judgment, direct a sale of the incumbered [sic] property
> (or so much thereof as may be necessary) and the application of the
> proceeds of the sale to the payment of the costs of the court and the
> expenses of the sale, and the amount due to the plaintiff; and sales of real
> estate under judgments of foreclosure of mortgages and liens are subject to
> redemption as in the case of sales under execution; (and if it appears from
> the sheriff's return that the proceeds are insufficient, and a balance still
> remains due, judgment can then be docketed for such balance against the
> defendant or defendants personally liable for the debt), and it becomes a
> lien on the real estate of such judgment debtor, as in other cases on which
> execution may be issued.

Idaho Code § 6-101. Fox Creek reads this statute to mean that in the event of default a

creditor must first pursue foreclosure and obtain the proceeds of a sale before a deficiency

judgment can be sought. Based on this interpretation Fox Creek contends that because the

FDIC is pursuing both a judicial foreclosure and a deficiency judgment they are in

violation of this rule.

The "One Action Rule" requires that both judicial foreclosure and a deficiency

judgment be pursued in the same action. The Ninth Circuit, applying a similar Montana

law, concluded that one of the purposes of the rule was to "protect the mortgagor against

multiplicity of actions when the separate actions, though theoretically distinct, are so

**MEMORANDUM DECISION AND ORDER - 8**

closely connected that normally they can and should be decided in one suit." *FDIC v. Shoop*, 2 F.3d 948, 970 (9th Cir. 1993) (citing George E. Osborne, <u>Handbook on the Law of Mortgages</u>, § 334 at 701 (2d ed. 1970).). Where Idaho courts have interpreted the law they have followed the same rule: "The [plaintiff] followed the proper course by proceeding to foreclose upon the [defendants'] property in order to obtain repayment of the debt evidenced by the promissory notes." *Elliot v. Darwin Neibaur Farms*, 69 P.3d 1035, 1043 (Idaho 2003) (citing *Federal Land Bank of Spokane v. Parsons*, 777 P.2d 1218, 1222 (Idaho Ct. App. 1989).). In that case the plaintiff pursued both a foreclosure and a deficiency judgment against the defendant.

Fox Creek's interpretation would turn the "One Action Rule" on its head. Rather than pursuing a consolidated action Fox Creek urges that the Court treat Idaho Code § 6-101 as creating a "Two Action Rule" that would require the plaintiff to sue in equity to foreclose the property and then sue on the note to collect any remaining debt not covered by the sale of the security. This is precisely the outcome that § 6-101 was intended to prevent. To require separate actions would encourage lenders to sue on the note and seek a deficiency judgment against the creditor. The "One Action Rule", by consolidating the actions, ensures that the security is exhausted before other assets of the creditor can be pursued. The FDIC, by consolidating the foreclosure and deficiency actions, is acting pursuant to Idaho Code §6-101. The Court finds that there is no genuine issue of material fact that would preclude summary judgment on the basis of the "One Action Rule".

**MEMORANDUM DECISION AND ORDER - 9**

### 3. Interest Computation

The interest on the loan secured by the Note was calculated using a 365/360 method that computes interest for 365 days in a 360 day year so that there are five extra days of interest that accrue over the year. (Douglas Dennis Affidavit, Ex A, Dkt. 20.) Fox Creek contends that the use of a 360-day accounting year to calculate the interest due on the Note creates a genuine issue of material fact. (Mem. in Opp'n to Pl.'s Mot. for Partial Summ. J. at 4, Dkt. 23.) Fox Creek contends, and it is undisputed, that calculation of interest based on a 365/360 computation results in a slightly higher rate of interest than the 9% per annum interest represented in the Note. As a result of this increase, Fox Creek argues that the rate is usurious and an unfair and deceptive trade practice. Because Fox Creek has not disputed any of the material facts surrounding the Note, it effectively urges the Court to grant summary judgment in its favor because the 365/360 method as a matter of law renders the Note an illegal instrument that must be rescinded.

### A. Usury

The Ninth Circuit has found the 365/360 rate to violate state usury laws. In *Am. Timber & Trading Co. v. First Nat'l Bank of Or.*, 511 F.2d 980 (9th Cir. 1974) the lender charged a per annum rate that was the maximum allowable under Oregon's usury laws. *Id.* at 982. The court held that because the 365/360 method charged slightly more than the represented rate, the method was in violation of Oregon's usury laws. *Id.* at 983. The court also relied on the National Bank Act which stated "that the receiving of a rate of interest greater than that allowed, when knowingly done, shall be deemed a forfeiture of

**MEMORANDUM DECISION AND ORDER - 10**

interest due and in case the greater rate of interest has been paid, the borrower may recover twice the amount of interest paid." *Id.* at 982-83. The rate allowed, however, is fixed by the usury laws of the state. *Id.* at 983. Based on this standard Fox Creek argues that because it was charged a higher rate than was represented on the Note at the very least its obligation with regards to the payment of interest should be rescinded. The Ninth Circuit cautioned, however, that its ruling in *American Timber* was limited to Oregon because it was based on Oregon's usury law. *Id.* at 984. Fox Creek cites other cases that rely on state usury laws to reach the same conclusion. *See, O'Brien v. Shearson Hayden Stone, Inc.*, 586 P.2d 830 (1978); *Ellis Nat'l Bank of Tallahassee v. Davis*, 359 So.2d 466 (Fla. App. 1978).

Idaho does not have a usury law. The Idaho Credit Code, first enacted in 1983, establishes that the maximum finance charge "shall be that which is agreed upon between the parties to the transaction." Idaho Code. § 28-42-201 (where finance charge is defined as "(i) Interest or any amount payable under a point, discount, or other system of charges, however determined". Idaho Code § 28-41-301(18)). Because Idaho does not have a usury law the Court is not bound to follow the result in *American Timber*. The Ninth Circuit did not rule that the 365/360 method was inherently usurious. The court made the correct observation that 365/360 results in a slightly higher rate of interest than represented, and when the state caps the rate of interest anything above that line must be usurious. Idaho has declined to establish such a ceiling. Without that ceiling or maximum rate the Court cannot determine that the use of the 365/360 method is usurious.

**MEMORANDUM DECISION AND ORDER - 11**

### B. Unfair and Deceptive Trade Practices

Fox Creek argues in a separate contention that the 365/360 method constitutes an unfair and deceptive trade practice. Fox Creek relies on a decision of the Supreme Court of California, *Chern v. Bank of Am.*, 544 P.2d 1310 (Cal. 1976), which found that "the practice of computing interest quoted as a 'per annum' rate on the basis of a 360-year is likely to deceive the public." *Id.* at 1316. The court found that this deception warranted injunctive relief pursuant to the California "Business and Professions Code section 17500." *Id.* at 1316. In that case the defendant took out a consumer loan for $5,000 dollars. *Id.* at 1312. It is not clear, however, that the present case is analogous to *Chern*. At issue here is a purely commercial loan for $3,500,000 between ostensibly sophisticated parties. The court in *Chern* declined to hold whether the 365/360 method was deceptive in a commercial context and confined its ruling only to consumer protection. *Id.* at 1316 ("The fact that it may be 'customary' business practice within the banking community to quote interest rates on the basis of a 360-day year does not necessarily establish that the practice is not misleading to the general public."). Because the Court is not confronted with a consumer transaction, the persuasive value of *Chern* is in doubt.

Fox Creek argues that the California code section is analogous to the Idaho Consumer Protection Act which forbids "engaging in any act or practice which is otherwise misleading, false, or deceptive to the consumer." Idaho Code § 48-603(17). Fox Creek also cites the Idaho Unfair Sales Act for the same premise. Idaho Code § 48-412. While it is true that the Idaho Consumer Protection Act has as its purpose protecting

**MEMORANDUM DECISION AND ORDER - 12**

"both consumers and businesses against unfair methods of competition and unfair or deceptive acts and practices in the conduct of trade and commerce" Idaho Code § 48-601, indicating that the legislature intended to protect businesses as well as consumers, it is not clear that the 365/360 method is a clear violation of that law.

The Court treads with caution in interpreting the Idaho Consumer Protection Act because no Idaho court has yet ruled on the legality of the 365/360 method. It does not appear, however, that in a commercial transaction the 365/360 method could be considered a deceptive or unfair trade practice. It appears that the 365/360 method is common in the commercial world. In 1971 the Federal Reserve found that 82% of commercial banks used 365/360 for at least some of their loans. 117 Cong.Rec. 18538 (1971) (statement of Rep. Patman). Large banks used the method at an even higher rate, and it was most frequently used for commercial loans. *Id.* The Federal Reserve cautioned, however, that "[t]his practice is not standard or uniform in any way." *Id.* at 18539. The Supreme Court of Arkansas also recognized that 365/360 is a long held, standard way of "striking a reasonable average as a practical means of reconciling erratic variables." *Martin v. Moore*, 601 S.W.2d 838, 840 (1980). It is difficult to imagine that when the Idaho legislature drafted the Idaho Consumer Protection Act it intended, through vague language designed to fill in any gaps in the statute, to specifically declare the 365/360 method illegal. Indeed, the Idaho Credit Code reads: "(2) This section does not limit or restrict the manner of calculating the finance charge, whether by way of add-on, discount, single annual percentage rate, or otherwise." Idaho Code § 28-42-201. In the absence of

**MEMORANDUM DECISION AND ORDER - 13**

such clear intent and given the prevalence of the method in the commercial finance industry, the Court declines to hold that the 365/360 method violates the Idaho Consumer Protection Act or any other Idaho laws.

The Court notes, however, that the Note did not disclose the method by which the interest would be calculated. This fact was made known to the parties when it was revealed in the Affidavit of Douglas Dennis in Support of Motion for Summary Judgment as to the Teton County Property. (Harris Aff. at 1.) Given the commercial nature of the transaction and the frequency of the 365/360 method in the financial world the Court is nevertheless satisfied that the Fox Creek as a sophisticated commercial transactor should have been on notice that the method might have been used to calculate the interest.

### C. 1821(j)

Even if Fox Creek could show that the 365/360 method violated the Idaho Consumer Protection Act or other statute, the Court would be unable to grant relief. Because this case involves the FDIC acting as receiver for a failed bank the Court's jurisdiction has been curtailed: "Except as provided in this section, no court may take any action, except at the request of the Board of Directors by regulation or order, to restrain or affect the exercise of powers or functions of the Corporation as a conservator or receiver." 12 U.S.C. § 1821(j). The Ninth Circuit has construed the language in this section in broad terms that limit what remedies are available to the Court.

The Court's primary role in a case where the FDIC is acting as receiver is to determine whether the corporation is acting within its statutory authority. Several circuits

**MEMORANDUM DECISION AND ORDER - 14**

recognize that §1821(j) bars a court from restraining the FDIC "unless it has acted or proposed to act beyond, or contrary to, its statutorily proscribed, constitutionally permitted, powers or functions." *Freeman v. FDIC*, 56 F.3d 1394, 1398 (D.C. Cir. 1995) (quoting *Nat'l Trust for Historic Pres. v. FDIC*, 21 F.3d 469 (D.C. Cir. 1994) *Accord Sahni v. Am. Diversified Partners*, 83 F.3d 1054 (9th Cir. 1996); *Ward v. Resolution Trust Corp.*, 996 F.2d 99 (5th Cir. 1993); *Telematics Intern., Inc. v. NEMLC Leasing Corp.*, 1967 F.2d 703 (1st Cir. 1992); *Gross v. Bell Sav. Bank*, 974 F.2d 403 (3d Cir. 1992). Congress has defined the FDIC's powers such that "The Corporation may […] as conservator or receiver […] collect all obligations and money due the institution […]" 12 U.S.C. § 1821(d)(2)(B)(ii). It is clear and uncontested that in this case the FDIC is acting pursuant to its statutory authority to collect all obligations due to AWB. The effect of Congress' ouster of the courts' subject matter jurisdiction is to bar effective restraint of the FDIC.

Fox Creek contends that §1821(j) is limited to barring the use of equitable remedies only, and that its Idaho Consumer Protection Act claim is grounded in law. Most courts, however, have been less concerned with the label attached to a particular action as opposed to its practical effect on the FDIC. In *Telematics Intern., Inc. v. NEMLC Leasing Corp.*, 1967 F.2d 703 (1st Cir. 1992) the plaintiff urged the court to adopt an alternate remedy that would not enjoin the FDIC from performing its statutory functions as clearly forbidden by §1821(j), but would grant the plaintiff the power to act such that the asset in question would be preserved in its ownership. *Id.* at 707. The court

**MEMORANDUM DECISION AND ORDER - 15**

in *Telematics* rejected this argument and concluded that courts lack the power to "restrain or affect the FDIC in the exercise of its powers as receiver." *Id.* at 707. Regardless of the equitable or legal nature of rescission in Idaho courts have followed the same logic as in *Telematics* to prevent restraint of the FDIC. In *Ward v. Resolution Trust Corp.*, 996 F.2d 99 (5th Cir. 1993) the plaintiff sought to rescind a contract for the sale of land owned by the FDIC as receiver. The court concluded that "§1821(j) precludes rescission as a remedy in cases such as the one now before us." *Id.* at 104 (citing *United Liberty Life Ins. Co. v. Ryan*, 985 F.2d 1320 (6th Cir. 1993). It is clear no matter what characterization the Defendant assigns to the action it urges the Court to take Congress has removed the court's power to carry it out.

Even if Fox Creek is correct in claiming that §1821(j) is effective only to bar equitable remedies the Court lacks the power to enforce other statutory regimes that might restrain the FDIC. In *Sahni v. Am. Diversified Partners*, 83 F.3d 1054 (9th Cir. 1996) the plaintiff attempted to restrain the action of the FDIC by appealing to a California state law that made the sale of assets the FDIC controlled as receiver illegal without the plaintiff's consent. The Ninth Circuit concluded that "courts have applied §1821(j) to insulate the actions of the FDIC as receiver from restraint, even where the receiver is alleged to have violated state law and equitable remedies are available." *Id.* at 1059-60. *See Volges v. Resolution Trust Corp.*, 32 F.3d 50, 52 (2nd Cir. 1994) ("[T]he fact that the RTC's actions might violate some other provision of law does not render the anti-injunction [§1821(j)] provision inapplicable.") (referring to state law); *Gross v. Bell Sav.*

**MEMORANDUM DECISION AND ORDER - 16**

*Bank*, 974 F.2d 403, 407 (3d Cir. 1992) ("[W]here the RTC performs functions assigned it under the statute, injunctive relief will be denied even where the RTC acts in violation of other statutory schemes.") (referring to federal law). Where, as here, a party moves the Court to restrain the FDIC because its actions might have violated state law Congress has stripped the Court of power to act.

### 3. Clean Hands

Both parties raise the issue of the doctrine of clean hands, which requires that a party seeking equitable relief must come before the court with clean hands, in their supporting memoranda. (Reply to Fox Creek's Resp. to Pl.'s Mot. for Partial Summ. J. at 10, Dkt. 26.) It is not necessary to address this issue because the relief Fox Creek seeks cannot be granted regardless of its prior conduct.

### 4. Ishii Affidavit

The Court notes that there is a discrepancy in the calculation of the principal owed to the FDIC by Fox Creek between Plaintiff's Affidavit of Douglas Dennis in Support of Motion for Summary Judgment as to the Teton County Property (Harris Aff.) and Plaintiff's Affidavit of Robert Ishii in Support of Motion for Summary Judgment as to the Teton County Property (Robert Ishii Affidavit, Dkt. 28.) The Court is not convinced, however, that this discrepancy creates a genuine issue of material fact that warrants denial of the summary judgment motion. The Court will require the FDIC to provide the correct amount of principal owed, as Fox Creek has not offered any evidence as to the correct amount of money withdrawn under the Note.

**MEMORANDUM DECISION AND ORDER - 17**

## CONCLUSION

There are no disagreements between the parties over the genuine material facts in this case. Fox Creek seeks to resist summary judgment based on the "One Action Rule" and the illegality of the 365/360 method of calculating interest. As these are questions of law it is appropriate for the Court to rule on them in a summary judgment motion. The Court finds that the FDIC's action is consistent with the "One Action Rule" and that the 365/360 interest rate calculation method is not illegal. As such, there are no genuine issues of material fact that warrant a trial and the FDIC is entitled to partial summary judgment.

## <u>ORDER</u>

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) Plaintiff's Motion for Partial Summary Judgment (Dkt. No. 17) be **GRANTED**.

2) On or before July 16, 2010, Plaintiff is to provide requested clarification on amount due and proposed partial judgment for the Court's review.

DATED:  **July 2, 2010**

Honorable Edward J. Lodge
U. S. District Judge

**MEMORANDUM DECISION AND ORDER - 18**